UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

LATAVIOUS BEAL,

        Petitioner,        Case No. 1:20-cv-848

v.        Honorable Janet T. Neff

JOHN DAVIDS,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Latavious Beal is incarcerated with the Michigan Department of Corrections at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. On May 15, 2017, Petitioner pleaded guilty in the Berrien County Circuit Court to armed robbery, in violation of Mich. Comp. Laws § 750.529, and use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On June 23, 2017, the court sentenced Petitioner to consecutive prison terms of 12 to 30 years for armed robbery and 2 years for felony-firearm.

On August 27, 2020, Petitioner timely filed his habeas corpus petition raising two grounds for relief,[1] as follows:

---

[1] The petition lists only these two grounds for relief. (Pet., ECF No. 1, PageID.4, 6.) Petitioner's memorandum in support also lists only those two issues as the "Questions Presented." (Pet'r's Mem., ECF No. 2, PageID.25.) Nonetheless, Respondent has addressed additional grounds for relief, including a challenge to the scoring of offense variable 7 and a challenge to the scoring of offense variable 17. Petitioner makes passing reference to those grounds in his memorandum:

> In this case the Petitioner acknowledge[s] that trial counsel did object to OV 7 and 17 but argues that trial counsel failed to object to OV 4.

\* \* \*

> I. The trial court erred in its factual findings when it determined that [Petitioner] was not denied his constitutional right to be sentenced upon accurate information where offense variable 4 was erroneously scored. US Const Am XIV.
>
> II. The trial court erred in its factual findings when it determined that [Petitioner] was not denied the effective assistance of counsel guaranteed by the federal constitution when his appellate counsel neglected to raise a strong and critical issue.

(Pet., ECF No. 1, PageID.4, 6.) Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because they are non-cognizable, procedurally defaulted, and/or meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are not cognizable on habeas review or they are meritless. Accordingly, I recommend that the petition be denied.

## Discussion

### I. Factual allegations

In Berrien County Circuit Court Case No. 17-000839-FC, Petitioner faced multiple felony charges. In addition to the armed robbery and felony-firearm counts on which he was convicted, Petitioner was charged with unlawful driving away of an automobile, first-degree home invasion, carjacking, carrying a concealed weapon, and possession of a firearm by a felon. (Berrien Cnty. Cir. Ct. Docket Sheet, ECF No. 8-1, PageID.133.) Moreover, the prosecutor gave

---

> Further, the Defendant is going to present the erroneous scoring of OV's 7 and 17 to the federal court of a writ of habeas corpus. If that court finds, like the Defendant believes it will, that the OV's should not have been scored, then his sentencing grid will change, and the error of the 10 points that should not have been scored for OV4, will then make a huge difference for he would then be a OV level II, which would be 27 months to 45 months at the minimum.

(*Id.*, PageID.26, 38–39.) Whatever Petitioner's intentions may have been, merely announcing an intention to raise issues is not the same as actually raising the issues. Moreover, as set forth fully below, the issues Petitioner expressed his intention to raise—the erroneous scoring of two offense variables—are not cognizable on habeas review.

2

notice that the state would pursue a sentence enhancement because Petitioner was a third habitual offender. (*Id*.)

In exchange for Petitioner's guilty plea to the charges of armed robbery and felony-firearm, the prosecutor offered to dismiss the other charges, including the habitual offender sentence enhancement. (Plea Hr'g Tr., ECF No. 8-3, PageID.189.) The prosecutor and defense counsel estimated Petitioner's armed robbery guidelines minimum sentence range to be 126 to 210 months. (*Id*., PageID.178.) Petitioner expressed some trepidation that the trial court might not follow the guidelines. To assuage Petitioner's concern, the court promised to sentence Petitioner within the minimum range provided by the guidelines. (*Id*., PageID.180.) The court then explained to Petitioner that if the court intended to sentence Petitioner outside the guidelines of 126 to 210 months, the court would provide Petitioner an opportunity to withdraw his plea. (*Id*., PageID.180–181.)

That promise prompted the prosecutor to inquire regarding whether the promise would stand even if the guidelines turned out to be different than counsels' estimate. (*Id*., PageID.181.) To address that concern, the trial court promised to sentence Petitioner within the specific range of 126 to 210 months—even if the actual calculation provided a different range— or the court would permit Petitioner to withdraw his plea. (*Id*., PageID.181–182.) Thereafter, when the court reviewed the plea agreement with Petitioner, the terms specifically included that Petitioner's armed robbery sentence minimum would fall between 126 and 210 months. (*Id*., PageID.189–190.)

With all the plea agreement terms acknowledged, Petitioner agreed to enter his plea based on those terms. Specifically, Petitioner admitted that, on August 30, 2016, he pointed a

3

pistol at his victim and proceeded to take his keys and wallet with the intent to permanently deprive him of those items. (*Id.*, PageID.192.)

At sentencing, the presentence investigation report calculated the guidelines minimum sentence range for the armed robbery charge to be 135 to 225 months, based on a prior record variable score of 27 and an offense variable score of 90. (Sentencing Tr., ECF No. 8-4, PageID.199.) Defense counsel challenged the scoring of offense variables 7 and 17. (*Id.*)

Offense variable 7 is scored where the victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense. Mich. Comp. Laws § 777.37. The prosecutor argued that, because Petitioner made the victim strip down, Petitioner had participated in conduct that substantially increased the victim's fear and anxiety. (Sentencing Hr'g Tr., ECF No. 8-4, PageID.200.) Defense counsel contended that the intent of having the victim strip down was to hamper any potential pursuit of Petitioner, not to cause fear and anxiety. (*Id.*, PageID.200–203.) The court disagreed and upheld the presentence investigator's scoring of 50 points for offense variable 7.

The investigator scored offense variable 17 at 10 points. Defense counsel argued it should be scored at 0 points. (*Id.*, PageID.203.) The prosecutor agreed. (*Id.*) So the court eliminated that 10-point assessment. But the 10-point reduction did not change the offense variable score level; thus it did not change the minimum sentence range. (*Id.*, PageID.203–204.)

The court sentenced Petitioner to 12 to 30 years on the armed robbery conviction. That minimum sentence fell within the calculated minimum sentence range of 135 to 225 months as well as the "agreed" minimum sentence range of 126 to 210 months.

Petitioner, with the assistance of counsel, filed an application for leave to appeal to the Michigan Court of Appeals. Petitioner raised two challenges to the scoring. First, he argued that prior record variable 7 was improperly scored at 10 points when it should have been scored at 0 points. Prior record variable 7 calls for a score of 10 points where the offender was convicted of one additional offense after the sentencing offense was committed. Mich. Comp. Laws § 777.57. Petitioner objected based on the assumption that the additional offense was the felony-firearm count to which he pleaded guilty. That offense would not properly be counted because it was a concurrent offense that would result in a consecutive sentence. *Id*. But Petitioner ignores the fact that, in a separate proceeding, he was also convicted of malicious destruction of fire or police property, in violation of Mich. Comp. Laws § 750.377b, an offense he committed subsequent to the armed robbery. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=327749 (visited Apr. 27, 2021). That offense justifies the 10-point assessment under prior record variable 7.

Second, Petitioner argued that he should not have been scored 50 points for offense variable 7. He raised the same argument trial counsel had raised at sentencing: Petitioner did not intend to increase the victim's fear, only to hamper any pursuit. (Pet'r's Appeal Br., ECF No. 8-7, PageID.254–255.)

The court of appeals rejected both arguments. By order entered January 26, 2018, the court denied leave to appeal "for lack of merit in the grounds presented." (Mich. Ct. App. Order, ECF No. 8-7, PageID.243.)

Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court raising the same two issues he raised in the court of appeals plus one new argument regarding the unconstitutional use of judge-found facts to impose a mandatory minimum sentence.

(Appl. for Leave to Appeal, ECF No. 8-8, PageID.322–325.) By order entered July 27, 2018, the Michigan Supreme Court denied leave to appeal. (Mich. Order, ECF No. 8-8, PageID.318.)

On April 26, 2019, Petitioner returned to the trial court and filed a motion for relief from judgment raising two issues, the same two issues he raises in this Court. The trial court agreed that, due to an intervening Michigan Supreme Court ruling, the scoring of 10 points on offense variable 4 was erroneous. (Berrien Cnty. Cir. Ct. Order, ECF No. 8-6, PageID.238–239.) But the court also concluded that reducing Petitioner's offense variable score by 10 points would not change the guidelines range and, therefore, resentencing was not required. (*Id*., PageID.239.) The trial court then concluded that because the 10-point swing would not change the guidelines minimum sentence range, Petitioner could not show prejudice from trial counsel's or appellate counsel's failure to raise the issue. (*Id*., PageID.239–242.)

Petitioner sought leave to appeal the trial court's denial of relief, first in the Michigan Court of Appeals and then in the Michigan Supreme Court. Those courts denied leave by order entered November 26, 2019, and April 29, 2020, respectively. (Mich. Ct. App. Order, ECF No. 8-9, PageID.333; Mich. Order, ECF No. 8-10, PageID.425.)

This petition followed.

## II. AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an

6

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

7

and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court

can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Erroneous scoring of offense variable 4

Offense variable 4 calls for assessment of 10 points where serious psychological injury to the victim might require professional treatment. Mich. Comp. Laws § 777.34. At the time Petitioner was sentenced, the principal published authority regarding the evidence sufficient to support scoring of offense variable 4 was *People v. Apgar*, 690 N.W.2d 312 (Mich. Ct. App. Nov. 9, 2004). In *Apgar*, the defendant challenged the sentencing court's assessment of 10 points on offense variable 4. The court of appeals concluded there was sufficient evidence to support the score: "Because the victim testified that she was fearful during the encounter with defendant, we find that the evidence presented was sufficient to support the trial court's decision to score OV4 at ten points." *Id*. at 318.

Undoubtedly on the strength of the *Apgar* decision, counsel chose to challenge the scoring of offense variables other than offense variable 4. The trial court was called upon to determine the victim's state of fear anyways because his fear was at issue in the scoring of offense variable 7. The judge explained that he was assessing 50 points for offense variable 7 because he "was at the preliminary examination . . . right next to the victim [as] he described what [Petitioner] did . . . forcing the victim to go upstairs in a more isolated location; take all of his clothes off; that was conduct—similarly egregious conduct, designed to substantially increase the victim's fear and

9

anxiety." (Sentencing Tr., ECF No. 8-4, PageID.203.) There can be no doubt that the trial judge concluded that the victim was "fearful" during the encounter with Petitioner or that the trial judge would have upheld the assessment of 10 points on offense variable 4 if Petitioner had challenged that score.

Even though *Apgar* was the controlling published authority on the issue, at the time Petitioner was sentenced, the Michigan Court of Appeals had recently issued an unpublished opinion that distinguished and questioned *Apgar*. In *People v. Beach*, No. 330140, 2017 WL 1394003 (Mich. Ct. App. Op., Apr. 18, 2017), the court of appeals stated:

> Perry testified that, when the second robber, identified by Wilson as defendant, pointed the gun at her, she did not know if he planned to shoot her. She worried she would never see her son again. She also confirmed that she was fearful during the robbery. In her victim impact statement, Perry said that the robbery was upsetting for her when it happened, that she feared she would not return home to her son, and that she is more cautious at work now as a result of the incident. When assessing 10 points for OV 4, the court explained that, in addition to the above evidence, Perry appeared agitated while testifying in court.
>
> However, we conclude that the fact that Perry testified that she was afraid during the incident does not establish that she suffered a *serious* psychological injury requiring professional treatment. Nearly every victim of a crime will experience fear during the criminal offense, and we conclude that the fact that Perry was afraid at the time of the incident, by itself, does not give rise to a serious psychological injury requiring professional treatment. In addition, the fact that Perry is more cautious at work because of the incident does not establish that she has a serious psychological injury that may require professional treatment. Further, we conclude that Perry's agitation while recounting the incident at trial does not demonstrate a serious psychological injury requiring professional treatment. There is no additional evidence in the record regarding the psychological effect of the incident on Perry. Therefore, the court improperly assessed 10 points for OV 4. See *McChester*, 310 Mich. App. at 359–360.[2]
>
> [2] We note that this case can be distinguished from *People v. Apgar*, 264 Mich. App. 321, 323–324, 329; 690 N.W.2d 312 (2004) (opinion by GAGE, J.); *id*. at 331–332 (O'CONNELL, J., concurring), in which this Court held that the trial court properly assessed 10 points for OV 4 when the victim testified that she was fearful during the incident, because *Apgar* involved the very different factual scenario of a brutal and violent rape of a minor child.

*Beach*, 2017 WL 1394003 at *5 (emphasis in original).

*Beach* did not dictate a result in Petitioner's case. It was unpublished and, therefore, of no precedential effect. Mich. Ct. R. 7.215(C) ("An unpublished opinion is not precedentially binding under the rule of stare decisis. Unpublished opinion should not be cited for propositions of law for which there is published authority. . . . A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis."). Moreover, it is not clear whether Petitioner's case might be more like Apgar's than Beach's because the court determined that it was Petitioner's intention to increase fear and anxiety—the sort of distinguishing circumstance mentioned in the *Beach* footnote.

After Petitioner's sentencing and after Petitioner filed his application for leave to appeal to the Michigan Court of Appeals, the Michigan Supreme Court overruled *Apgar* in P*eople v. White*, 905 N.W.2d 228 (Mich. 2017), coincidentally a case out of Berrien County. The *White* court stated:

> The issue in this case is whether the trial court erred by assessing 10 points for Offense Variable (OV) 4 ("serious psychological injury" to a victim occurred) when the only evidence to support this scoring was the victim's fear while the crime was being committed. We conclude that (a) points for OV 4 may not be assessed solely on the basis of a trial court's conclusion that a "serious psychological injury" would normally occur as a result of the crime perpetrated against the victim and (b) evidence of fear while a crime is being committed, by itself, is insufficient to assess points for OV 4. Accordingly, the trial court erred by assessing 10 points for OV 4.

*White*, 905 N.W.2d at 228. When considering Petitioner's motion for relief from judgment, the trial court relied on *White* to conclude that offense variable 4 was improperly scored. (Berrien Cnty. Cir. Ct. Order, ECF No. 8-6, PageID.238–239.)

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02

11

(6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000); *Lott v. Haas*, No. 17-2462, 2018 WL 2717052, at *1 (6th Cir. Apr. 10, 2018) (concluding that it is beyond reasonable debate that errors in applying sentencing guidelines do not state a claim for federal habeas relief).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)). For example, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948). Petitioner attempts to bring his sentence scoring challenges under the umbrella of habeas cognizability by claiming that the court relied upon inaccurate information when scoring the offense variables.

To prevail on such a claim, Petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *United States v. Polselli,* 747 F.2d 356, 358 (6th Cir. 1984) *cert. denied*

12

469 U.S. 1196 (1985). In *United States v. Tucker*, the Supreme Court was concerned about the sentencing court's reliance on misinformation where the court gave "explicit attention" to it, "found[ed]" its sentence "at least in part" on it, or gave "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447. Petitioner does not even come close to meeting that standard.

Petitioner suggests his sentence was based on false information, but his argument really centers on whether the trial court correctly applied the guidelines. Petitioner does not point to a single bit of information that the trial court relied on that was false. Instead, he complains that the court considered fearfulness as an indicator of serious psychological injury when, after *White*, that is not sufficient under state law. Accordingly, Petitioner's challenge to the scoring of offense variable 4 does not implicate the protections of the Fourteenth Amendment. The challenge relates only to state law.

Moreover, even if Petitioner could conjure up a bit of "false" information that the trial court relied on, he cannot show that the court's reliance on that information was of consequence to Petitioner's sentence. Although the trial court ultimately concluded that it was error to assess 10 points for offense variable 4, he also determined that it was an error that was harmless to Petitioner. (*Id.*, PageID.239) ("The subtraction of 10 points from the Defendant's aggregate score does not alter the defendant's guidelines range.").[2] Petitioner concedes that point. (Pet'r's Mot. for Relief from J., ECF No. 8-5, PageID.229; Pet'r's Appl. for Leave to Appeal, ECF

---

[2] The Michigan courts have held that, if correction of a scoring error would not change the minimum guidelines range, the defendant is not entitled to resentencing and the error is harmless. *People v. Francisco*, 711 N.W.2d 44, 49 n.8 (Mich. 2006); *People v. Davis*, 658 N.W.2d 800, 803-04 (Mich. 2003); *People v. Coakley*, No. 337318, 2018 WL 3397647, at *4 (Mich. Ct. App. Jul. 12, 2018) ("A scoring error that does not affect the guidelines range is harmless, and does not require resentencing.") (citing *Francisco* and *Davis*); *see also United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019) ("Errors that do not affect the ultimate Guidelines range or sentence imposed are harmless and do not require resentencing.").

No. 8-9, PageID.347; Pet'r's Appl. for Leave to Appeal, ECF No. 8-10, PageID.436; Pet'r's Memo., ECF No. 2, PageID.38) ("Without the ten points received under OV4 Defendant's guidelines do not change . . . .").

The undersigned agrees that the purported error in scoring the offense variable was harmless. On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993),[3] regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *See Hargrave v. McKee,* 248 F. App'x 718, 728 (6th Cir. 2007) (citing *Fry v. Pliler*, 551 U.S. 112, 120-21 (2007)); s*ee also Vasquez v Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007). The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. *Brecht*, 507 U.S. at 638.

For the same reason the state appellate court concluded any error was harmless—because Petitioner concedes that correction of the error would leave him with the exact same minimum sentence range—Petitioner cannot show that the error, if any, had a substantial and injurious effect on the result.[4] Because the error was harmless under *Brecht*, Petitioner is not entitled to habeas relief on the claim.

---

[3] In *Davenport v. MacLaren*, 964 F.3d 448 (6th Cir. 2020), the Sixth Circuit clarified that the standard applicable to a state-court harmlessness finding is only the *Brecht* standard, not the *Brecht* standard coupled with an evaluation of the state-court's application of the *Chapman* standard under the AEDPA standard. *Id.* at 454-59 (citing *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (holding that the *Brecht* test subsumes the limitations imposed by AEDPA) (citing *Fry*, 551 U.S. at 119-20)). The Supreme Court has recalled and stayed the mandate in *Davenport*, *Brown v. Davenport*, 141 S.Ct. 1288 (2021), and granted a petition for certiorari, *Brown v. Davenport*, No. 20-826, 2021 WL 1240919 (Apr. 5, 2021).

[4] Although Petitioner concedes that subtracting the 10 points assessed for offense variable 4 would not change the result, it is worth examining why that is the case. When the trial court accepted Petitioner's plea, the court agreed to sentence Petitioner in the guidelines range of 126 to 210 months. In the grid for Petitioner's offense, Mich. Comp. Laws § 777.62, that is the cell that corresponds to PRV level D and OV level IV. At sentencing, however, the guidelines were scored a little bit higher, at PRV level D and OV level V, which corresponds to a minimum range of 135 to 225 months. (Sentencing Tr., ECF No. 8-4, PageID.199.) Based on the court's promise during the plea hearing, however, Petitioner would have been sentenced in the D, IV cell. When the court sentenced Petitioner, after subtracting 10 offense variable points for offense variable 17, Petitioner's offense variable score of 80 and his prior

## IV. Ineffective assistance of trial and appellate counsel

Petitioner contends that his trial counsel rendered ineffective assistance because he failed to challenge the scoring for offense variable 4. Petitioner claims appellate counsel was also ineffective for failing to challenge the scoring of offense variable 4 or failing to raise trial counsel's ineffective assistance for his failure to challenge the scoring of offense variable 4.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

---

record variable score of 27 still left him at PRV level D and OV level V. Subtracting another 10 points for offense variable 4 would put Plaintiff at PRV level D and OV level IV. That is the cell with a range of 126 to 210 months, which was the range from which the court had already promised to select Petitioner's minimum sentence.

15

The trial court concluded that Petitioner had failed to demonstrate ineffective assistance under *Strickland* because, for the reasons set forth above, any error in scoring offense variable 4 was harmless. (Berrien Cnty. Cir. Ct. Order, ECF No. 8-6, PageID.239–242.) As a result, Petitioner could not demonstrate prejudice. (*Id.*)

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Because the trial court determined the *Strickland* issues only to evaluate whether Petitioner had procedurally defaulted his ineffective assistance of counsel issues by not showing good cause for failing to raise the issues on direct appeal, it is not clear whether the trial court resolved the ineffective assistance issues on the merits. If the court resolved the issues on the merits, that resolution is entirely consistent with, and not contrary to, or an unreasonable application of, clearly established federal law. The determination that any error was harmless necessarily means that it is not prejudicial under *Strickland*. *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless

error test of *Brecht*); *see also Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) ("[O]ur previous analysis of *Strickland* prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under *Brecht*."); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error at best, he cannot establish that he suffered prejudice [under *Strickland*].").

If the trial court did not resolve the ineffective assistance claims on the merits, the same result would follow on *de novo* review. Because any error was harmless, Petitioner cannot establish *Strickland* prejudice. *Kyles*, 514 U.S. at 436. Moreover, when Petitioner was sentenced and when he filed his application for leave to appeal in the Michigan Court of Appeals, trial and appellate counsel were limited by the binding precedent of *Apgar*. It was only after sentencing and after the application for leave to appeal was filed that *White* overruled *Apgar*. Certainly both counsel could have argued to overturn binding precedent, even if only to preserve the issue for the Supreme Court, but the undersigned concludes that it was not professionally unreasonable for counsel to forego such a long shot argument in favor of challenges that were not already conclusively resolved against Petitioner's position.

For all of these reasons, the Court concludes that Petitioner has failed to meet his burden under *Strickland* and he is not entitled to habeas relief on his ineffective assistance of counsel claims.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth

17

Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:  May 6, 2021                           /s/ Ray Kent
                                                           Ray Kent
                                                           United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).